IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No.: 5:15-cv-660-D

JAMES E. VARNELL,                          )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )
                                           )
BRIDGESTONE AMERICAS TIRE                  )
OPERATIONS, LLC,                           )
                                           )
                    Defendant.             )

## CONSENT PROTECTIVE ORDER
## (BUSINESS, TECHNICAL AND
## COMMERCIALLY-SENSITIVE INFORMATION)

During the course of discovery, the parties may exchange information, to include documents and testimony containing information, which a party may claim is proprietary as sensitive business, commercial or other technical information, the uncontrolled release of which would cause the producing party competitive harm. In order to facilitate this discovery while protecting the producing party's proprietary interests, it is hereby ORDERED:

**I.**

**A.** The parties recognize that discovery in this matter may call for the production of materials containing confidential and proprietary business, technical and other commercially sensitive information, and/or personal information about third-parties, and that the producing party may claim it has a protected proprietary and property interest in those materials, or otherwise has an interest in preventing the dissemination of information about third-parties.

**B.** If the producing party has a good faith factual and legal basis for asserting a privilege or exemption from public disclosure, the producing party may designate as

"CONFIDENTIAL" the portion of any produced material it considers subject to its claim of privilege or exemption in accordance with Section I.F, below, relying on the terms of this Protective Order ("Protective Order") in producing that information. Such "CONFIDENTIAL" designation shall make the designated portions of those produced materials and all copies, prints, summaries, translations, or other reproductions of such material subject to this Protective Order. This Protective Order also shall apply to the specific pages and lines from oral depositions as well as any discovery responses, designated as "CONFIDENTIAL" by the producing party in accordance with Section I.G, below.

    **C.** When used in this Agreed Protective Order, the word "CONFIDENTIAL" means designated research, development, and other technical or other commercially sensitive information of the producing party and/or personal information about third-parties.

    **D.** When used in this Protective Order, the term "CONFIDENTIAL MATERIAL" means all designated written materials, computer documents, specifications, design drawings, mold drawings, tire standards, claims histories, adjustment data, testing documentation, videotapes, responses to Interrogatories, Requests for Production, Requests For Admission, or other written discovery referencing confidential material, deposition transcripts, documents produced by the producing party to any governmental agency or body such as the National Highway Traffic Safety Administration ("NHTSA") at any time and deemed by that agency or body to be Confidential pursuant to 49 CFR § 512, or other similar regulations, and all other designated tangible items which disclose "CONFIDENTIAL" information, whether produced in hard-copy, on CD-ROMs or DVDs, or any other media. Nothing in this Protective Order, however, shall be interpreted to require the production of any trade secret information as defined in N.C. Gen. Stat. § 66-152 et seq. or otherwise, unless so ordered by the court.

**E.**    The burden of proving the confidential nature of designated information is on the producing party. Prior to designating any material as "CONFIDENTIAL" and subject to this Protective Order, the producing party must make a bona fide determination that the material is, in fact, confidential as defined above, the dissemination of which would significantly damage the producing party's competitive position or impact the privacy rights of third-parties.

**F.**    In order to designate a portion of any document or other printed material as "CONFIDENTIAL," the producing party shall mark the designated pages of the material with the word "CONFIDENTIAL" in a manner that does not obscure, or impair the legibility of any information contained within the material, but makes it difficult to remove the designation. In order to designate a computer database, disc, compact disc, drive, or other electronically recorded material as "CONFIDENTIAL," the producing party shall mark the disc, case or envelope containing the material with the word "CONFIDENTIAL." Documents printed from such electronic media shall be marked the same as documents originally produced on paper.

**G.**    In the case of a deposition or oral examination, counsel for the producing party may, during the deposition, designate on the record that testimony involving "CONFIDENTIAL MATERIAL" be held as "CONFIDENTIAL," and the entire deposition transcript will be treated as "CONFIDENTIAL" until counsel for the producing party receives a transcript of the deposition and designates specific page and line portions of the testimony. In the event the producing party's counsel during the deposition does not designate on the record that testimony involving "CONFIDENTIAL MATERIAL" be held as "CONFIDENTIAL," the producing party does not waive its right to designate the deposition testimony or any parts thereof as "CONFIDENTIAL" upon receipt of the deposition transcript. After receipt of the final deposition transcript, the producing party shall identify by page and line the portion of the

material that the producing party intends to designate as "CONFIDENTIAL" in a written letter served to all counsel of record within 30 days after the producing party's receipt of the written deposition transcript from the court reporter. Only the portions of the deposition transcript designated by the producing party during this time period shall remain "CONFIDENTIAL." Any party challenging the "CONFIDENTIAL" designations of the deposition transcripts shall inform the producing party of those specific challenges in writing within 20 day of receiving the designations. The producing party shall have 20 days from receipt of the written challenges to move for an appropriate order regarding the confidentiality of all or portions of the transcript. The parties stipulate that the court reporter or videographer for any such depositions, who will be given a copy of this Protective Order, and will execute an acknowledgement thereof, shall not disclose to anyone (other than the COVERED PERSONS as defined in Section I. H below) any deposition testimony or exhibits in this lawsuit.

    **H.**    When used in this Protective Order, the term "COVERED PERSONS" includes only the following:

    (1) the Court and all Court personnel;

    (2) the named parties in this litigation;

    (3) retained counsel for all parties in this litigation, including members of counsel's legal or support staff (e.g., in-house investigators, secretaries, legal assistants, paralegals and law clerks), to the extent reasonably necessary for such persons to render assistance in this litigation;

    (4) witnesses and the jury in this case, and

    (5) non-attorney experts retained or consulted by counsel for any party to assist in the preparation, prosecution, or evaluation of this litigation, provided that no disclosure shall

be made to any expert or consultant who is then currently employed by a competitor of a party; with regard to this subsection, Defendant has agreed that the entities shown in the attached Exhibit B comprises the list of "competitors" as that term is used above. In the event Plaintiff desires to share confidential information with an expert or consultant then currently employed with a competitor as listed in Exhibit B, counsel for Plaintiff shall not do so prior to obtaining an order from the Court addressing that issue. The parties agree that to the extent said process results in a need to extend any deadline for designation of experts, the parties will cooperate in good faith to agree to and/or obtain said extension from the Court.

## II.

This Protective Order is to facilitate the exchange of records and information in discovery. It governs disclosures to third persons or disclosure of records for discovery motions and discovery proceedings. Nothing in this Protective Order shall be deemed to preclude any parties' right to oppose discovery on grounds not addressed under the terms of this Protective Order, or to object on any ground to the admission of any CONFIDENTIAL MATERIAL into evidence at trial. Each party bears the burden of raising and/or meeting any assertions of privilege or work-product protection pursuant to the North Carolina Rules of Civil Procedure and applicable case law separate and apart from the issues of confidentiality addressed in this Order.

## III.

Absent a further order of the Court, those documents marked as "CONFIDENTIAL MATERIAL," as described in Sections I. F and I. G, shall not be used for any purpose other than the prosecution or defense of this captioned action, and shall not be shown, disseminated or disclosed in any manner to anyone other than COVERED PERSONS as defined in Section I. H

without the prior written agreement of the producing party or by order of the Court after due notice to the producing party.

**IV.**

Before showing or divulging any "CONFIDENTIAL MATERIAL" or "CONFIDENTIAL" information to any COVERED PERSON other than the Court and Court personnel, counsel shall first obtain from each such person a signed "WRITTEN ASSURANCE" in the form attached hereto as Exhibit "A." Counsel shall maintain a list of all such recipients of "CONFIDENTIAL MATERIAL" to whom this paragraph applies and the original of every "WRITTEN ASSURANCE" required pursuant to this paragraph. At the conclusion of the litigation, the parties shall forward to counsel for the producing party each and every signed "WRITTEN ASSURANCE" and a list of all recipients of "CONFIDENTIAL MATERIALS"; however, with regard to consultant(s) not identified as expert(s) in this matter, counsel need only provide a copy of the "WRITTEN ASSURANCE" redacted to remove any reference to the identity of the consultant(s).

**V.**

**A.** If any "CONFIDENTIAL MATERIAL" is filed with this Court, including any pleading incorporating "CONFIDENTIAL MATERIAL," the portion of such filing containing "CONFIDENTIAL MATERIAL" shall be filed in a sealed envelope on which the following legend shall prominently appear:

> **JAMES E. VARNELL v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC:**
> CONFIDENTIAL - This envelope contains documents or other material filed by the parties in this matter. It shall not be opened nor the contents thereof displayed or revealed except by the Order of this Court.

**B.** "CONFIDENTIAL MATERIAL" may be introduced into evidence, if otherwise admissible, provided that it may only be done so during a hearing or trial when counsel for the

producing party is present, and subject to the producing party's right to seek in-camera treatment of such documents. Further, the Court may take such steps as it deems reasonably necessary to preserve the confidentiality of the documents or information.

**C.** All writings submitted to or filed with the Court in connection with any pre-trial proceeding that contain, set forth, summarize or otherwise disclose "CONFIDENTIAL MATERIAL" shall be under seal in accordance with Section V.A, and such documents shall not be publicly available, except by further order of this Court.

**D.** If any party or person who has obtained "CONFIDENTIAL MATERIAL" under the terms of this Protective Order receives a subpoena or other legal process commanding the production of any such "CONFIDENTIAL MATERIAL" (the "Subpoena"), such party or person shall promptly notify counsel for the producing party of the service of the Subpoena. The party or person receiving the Subpoena shall not produce any "CONFIDENTIAL MATERIAL" in response to the Subpoena without either the prior written consent of counsel for the producing party, or an order of a court of competent jurisdiction.

## VI.

Certain parties may produce large volumes of materials in discovery in this matter, including collections of materials in the form of paper or electronic documents, increasing the likelihood that information protected from discovery by certain privileges or immunities, or "CONFIDENTIAL MATERIAL" not marked as such, may be produced inadvertently. Therefore, the following provisions shall apply to the production of information in this case:

**A.** Inadvertent production of documents subject to the work-product doctrine, the attorney-client privilege, the trade secret and proprietary business information privilege, or other legal privilege, rule or doctrine protecting information from discovery shall not constitute a waiver of the immunity or privilege either for the inadvertently produced document or its subject

matter (so-called "subject matter waiver"), provided that the producing party shall notify the receiving party in writing of such inadvertent production promptly upon becoming aware of it.

**B.** If reasonably prompt notification is made, the receiving parties must use reasonable efforts to retrieve and destroy or retrieve and return to the designating party all copies of the documents lacking the confidentiality designation. However, nothing in this paragraph precludes any receiving party from challenging the new confidentiality designation of these documents pursuant to the procedure set forth in Paragraph G of this Order. No use shall be made of such inadvertently produced documents during discovery or at trial nor shall they be disclosed to anyone who was not given access to them before the request to return and destroy them, pending further order of the Court.

**C.** If any party contends that the notification of inadvertent production was not "reasonably prompt," it shall notify the producing party in writing, and will make no further use of such documents pending a resolution of their status by the Court. It shall be the burden of the producing party to move for a protective order regarding the inadvertent production, and to demonstrate both that the production was inadvertent, that reasonable diligence was exercised to identify the inadvertently produced information, and that notification was made with reasonable promptness after discovering the inadvertent production.

**D.** The party returning or destroying such documents may move the Court for an order compelling production of the material, but such motion shall not assert the fact or circumstances of the inadvertent production as a ground for entering such an order.

**E.** Inadvertent failure to designate produced materials as CONFIDENTIAL pursuant to the terms of Section I above shall not constitute a waiver of the right to designate such

materials CONFIDENTIAL provided that the producing party shall notify the receiving party of such inadvertent failure to designate promptly upon becoming aware of it.

F.     If reasonable notification is made of such failure to designate, such inadvertently non-designated documents and all copies thereof, shall be returned to the producing party or destroyed and such material shall be deleted from any litigation-support file or database. No use shall be made of such non-designated documents during discovery or at trial without the appropriate "CONFIDENTIAL" markings, nor shall they be disclosed to anyone who was not given access to them before the request to return or destroy.

G.     Any inadvertently produced document or documents provided to the Court pursuant to this Section VI shall not be considered a "court record".

H.     This Order shall not apply to the disclosure of confidential material or the information contained therein at the time of trial, through the receipt of confidential material into evidence or through the testimony of witnesses. These issues may be taken up as a separate matter upon the motion of any of the parties, who shall not be prejudiced in any such motion by any of the provisions of this Order.

### VII.

Within 90 days after the final disposition of this lawsuit, by settlement, trial or appeal, each party having designated materials as confidential shall provide, in writing, to each party to which the confidential materials have been provided, a list or inventory of confidential materials the designating party wishes returned or destroyed. The list or inventory shall enumerate what specific confidential materials, by Bates number or other identifying designation, are to be destroyed or returned to the designating party. Within thirty days of receipt of the list or inventory, each party shall retrieve all copies of materials designated "CONFIDENTIAL" from his or its own files, and from experts or other persons to whom he or it has provided such

materials consistent with this Order, and shall do one of the following: (1) return to the designating party all such Designated Materials, including all copies thereof, produced by such designating party during this action; or (2) confirm in writing to the designating party that all such Designated Materials produced by such other party during this action have been destroyed. All material protected by this Order that has been placed in any computer database, hard drive, or disk shall be deleted or maintained as confidential, as described above, and any documents listing or summarizing information protected by this Order shall be destroyed or maintained as confidential within the same period. .

### VIII.

In the event counsel for any party, in good faith, disputes the designation of any document as "CONFIDENTIAL," he or she shall notify counsel for the producing party in writing. The producing party shall seasonably apply to the Court for a determination that the document is or is not protected pursuant to this Protective Order. Until a final determination by the Court, any disputed document will be treated as CONFIDENTIAL MATERIAL pursuant to this Protective Order. Nothing in this Protective Order shall be construed to alter or shift the burdens of production and persuasion ("the burden of proof") as they apply to the assertion of privileges or exemptions from public disclosure or any claim or affirmative defense in this matter.

### IX.

**A.** This Protective Order shall not preclude the parties from exercising any rights or raising any objections otherwise available to them under the rules of discovery and evidence. Nothing contained in this Protective Order shall in any manner change, alter or modify any of the rights of the producing party or any other party under any other orders issued by any other courts

concerning the protection of CONFIDENTIAL MATERIALS and CONFIDENTIAL information. Nothing in this Protective Order shall limit the rights of parties to apply for further protective orders or for modification of the terms of this Protective Order.

**B.**     Nothing herein shall be construed to preclude or limit the presence of any individual at any proceedings in or the trial of this action.

**C.**     This Protective Order may not be waived, modified, abandoned or terminated, in whole or in part, except by an instrument in writing signed by the parties, or by Order of the issuing Court. If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

**D.**     This Protective Order shall be binding upon the parties hereto, their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

**X.**

At the conclusion of this lawsuit, the Court shall retain jurisdiction of this lawsuit for the enforcement of this Protective Order.

SO ORDERED, the 14th day of October 2016.

Robert B. Jones, Jr.
United States Magistrate Judge

CONSENTED TO:


_____
Thomas W. Henson
NC State Bar No.: 16669
Carmaletta Henson
NC State Bar No.: 26494
Attorneys for Plaintiff

CONSENTED TO:

David M. Duke |with consent  RFT

David M. Duke
NC State Bar No.: 12388
Michael Rainey
NC State Bar No.: 37009
Young Moore & Henderson PA
Attorneys for Defendant Bridgestone Americas Tire Operations, LLC

CONSENTED TO:

J. Matthew Little
NC State Bar No.: 20032
Rebecca R. Thornton
NC State Bar No.: 40008
Attorneys for Attorneys for
Defendant Bridgestone Americas Tire Operations, LLC

## EXHIBIT "A"

### LIMITED SPECIAL APPEARANCE AND AGREEMENT FOR
### ACCESS TO CONFIDENTIAL MATERIAL

I hereby acknowledge and affirm that I have read the terms and conditions of the Protective Order dated _____ and agreed to by the parties ("Protective Order") in the action titled <u>JAMES E. VARNELL v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC.</u> I understand the terms of the Protective Order and under oath consent to be bound by such terms as a condition to being provided access to the CONFIDENTIAL MATERIALS furnished by the parties in this action. Further, by executing this Agreement, I hereby consent to the jurisdiction of the above-captioned Court or any Court of competent jurisdiction for the special and limited purpose of enforcing the terms of the Protective Order.

I recognize that all civil remedies for breach of this Agreement are specifically reserved by the producing parties in this action and are not waived by the disclosure provided for herein. Further, in the event of the breach of this Agreement, I recognize that the producing parties may pursue all civil remedies available to them as third-party beneficiaries of this Agreement.

_____          _____
Name                                      Date

_____          _____
Firm                                      Telephone Number

_____
Street Address

_____
State & Zip Code

NORTH CAROLINA

_____ COUNTY

Personally appeared before me this _____ day of _____, 2016, _____, who, being first duly sworn, acknowledged the execution of the foregoing agreement for the purposes and considerations therein expressed.

_____          _____
Notary Public                             My Commission Expires

**EXHIBIT**

tabbies

**A**

| Company | Country of origin | Year founded | Brands and subsidiaries | Notes |
|---|---|---|---|---|
| Aeolus Tyre Co., Ltd. | China | 1965 | Aeolus | |
| Ahuja Continental Limited | India | 1993 | Yokostone Tyres | |
| AKA Products | United States | 2008 | AKA | |
| Alliance Tire Company Ltd.[1] | Israel | 1950 | Alliance | |
| American Transportation Products, LLC[2] | United States | 1989 | American Transportation | |
| Apollo Tyres Ltd.[3] | India | 1972 | Apollo, Apollo Tyres South Africa (formerly Dunlop South Africa|Brand name rights sold to Sumitomo Rubber), Kaizen, Maloya, Regal, Vredestein | |
| Asian Tire Factory Ltd.[4] | India | 1993 | ATF, FARMKING, EARTHKING | |
| Artawheel Tire Industrial Complex[5] | Iran | 1985 | Goldstone, Yazd Tire | |
| Bangkok Metropolis Motor Co., Ltd.[6] | Thailand | 1963 | Cobra | |
| Birla Tyres[7] | India | 1991 | Birla Tyre | |
| TVS Tyres[8] | India | 1981 | TVS TYRES (TVS Eurogrip) | |
| Barez Industrial Group[9] | Iran | 1993 | Barez | |
| Belshina[10] | Belarus | 1965 | Belshina | |
| Bridgestone Corporation[11][12][13] | Japan | 1931 | Bridgestone, Firestone, Fuzion, Seiberling (Latin America), Uniroyal (Australia), Dayton, Supercat (Australia and New Zealand), Fireforce (South Africa) | |
| BRISA Bridgestone Sabanci Tire Manufacturing and Trading Inc[14] | Turkey | 1974 | Bridgestone (Europe and Middle East), Lassa | |
| CAMAC Tires[15] | Portugal | 1967 | CAMAC | |
| Carlisle Companies, Inc.[16] | United States | 1917 | Carlisle Transportation Products | |
| Casumina[17] | Vietnam | 1976 | Casumina, Euromina | |
| CEAT Ltd[18] | India | 1958 | CEAT | |
| Cheng Shin Rubber Ind. Co., Ltd.[19] | Taiwan | 1967 | Cheng Shin, Maxxis | |
| Continental AG[20][21][22] | Germany | 1871 | Continental, Barum, Euzkadi, General Tire, Gislaved, Mabor, Matador, Point S, Semperit, Sime Tyres, Viking, Uniroyal (Europe), Sportiva, Dunlop (Malaysia, Singapore and Brunei), Ameri*Steel, ContiRe, ContiTread | |
| Cooper Tires[23][24] | United States | 1914 | Avon, Cooper, Dean, Eldorado, Mastercraft, Mentor (new brand introduced in spring 2012), Starfire, Definity, Roadmaster, Mickey Thompson, Dick Cepek, Chengshan, Austone, Fortune, Hercules and Ironman. | |

EXHIBIT
B

| Company | Country of origin | Year founded | Brands and subsidiaries | Notes |
|---|---|---|---|---|
| Danang Rubber Company[25] | ★ Vietnam | 1993 | DRC | |
| Dena Tire And Rubber Manufacturing Company[26] | Iran | 1954[27] | Dena Tire | |
| Diamond Tyres Limited[28] | Pakistan | 1968 | Mohawk, Diamond | |
| DMACK[29] | United Kingdom | | DMACK | |
| Douglas Tires | United States | 1990 | Douglas Tires. | Manufactured at Goodyear/ Kelly production plants. |
| Ralson India Limited | India | 1967 | Ralco, Ralson - Two Wheeler, Three Wheeler, ADV, FARM, ULT, LCV Tyres | |
| East Bay Tire Co.[30] | United States | 1946 | Dawg Pound Tires | |
| FATE[31] | Argentina | 1940 | FATE | |
| Federal Corporation[32] | Taiwan | 1954 | Federal, Hero | |
| Fullrun Tyre | China | 2003 | Fullrun, Fullway, Adereneza, Nature, Autogrip, Versatyre | |
| General Tyre & Rubber Company of Pakistan Limited[33] | Pakistan | 1963 | General | |
| Giti[34] | Singapore | | Giti Tire,[35] GT Radial,[36] Primewell,[37] Runway, Dextero, Hualin, Greatwall, Roadpro | |
| Goodyear[38] | United States | 1898 | Debica,[39] Douglas, Dunlop (North America, Europe, Australia and New Zealand), Fierce, Fulda, Goodyear, Kelly-Springfield, Sava, Pneumant Tires (Pneumant Reifen GmbH)[40] | |
| Hangzhou Zhongce Rubber Company | China | 1958 | Chaoyang, CYT, Goodride, Westlake, Yartu | |
| Hankook Tire[41][42][43] | South Korea | 1941 | Aurora, Hankook, Kingstar, Laufenn | |
| Haq Tyres & Rubber Industries[44] | Pakistan | 2003 | Flying Hawk | |
| Hoosier Racing Tire[45] | United States | 1957 | Hoosier | |
| Hutchinson SNC[46] | France | 1957 | Hutchinson Tires | |
| Inoue Rubber Co., Ltd. | Japan | 1926 | IRC Tire | |
| Interstate Tire & Rubber Company[47] | Netherlands | 1973 | Interstate Tires | |
| J. K. Organisation[48] | India | | JK Tyres, Tornel | |
| Kenda Rubber Industrial Company[49] | Taiwan | 1962 | Kenda | |
| Kesoram Industries Ltd.[50] | India | | Birla | |

| Company | Country of origin | Year founded | Brands and subsidiaries | Notes |
|---|---|---|---|---|
| Kumho Tires[51][52] | South Korea | 1960 | Admiral, Marshal, Kumho, Zetum | |
| Lego Group[53] | Denmark | 1932 | | World's largest manufacturer of tires by number of units (318 million in 2011). Manufactures toy tires for its building block set. Began tire production in 1962.[53] |
| Lucas Classic Tires (http://www.lucasclassictires.com/) | United States | 1957 | Bedford, Custom Classic, Lucas, Royalton, Wards Riverside | |
| Marangoni S.p.A[54] | Italy | 1945 | Marangoni (tyres), Eltor (industrial tyres) | |
| Michelin Group[55][56][57][58][59] | France | 1889 | BFGoodrich, Kleber, Kormoran, Michelin, Orium, Riken, Taurus, Uniroyal (North America), Tigar Tyres, Strial, Sebring | |
| Mitas, a. s.[60] | Czech Republic | 1933 | Mitas, Continental (agricultural tyres) | Subsidiary of CGS Holding, a. s. |
| MRF Tyres[61] | India | 1946 | MRF<br><br>Madras Rubber Factory Ltd Established- 1954 India Brands- MRF | |
| Nankang Rubber Tire[62][63] | Taiwan | 1959 | Nankang, Sonar, Star Performer TNG | |
| Nexen Tire[64][65] | South Korea | 1942 | Nexen, Roadstone, Capital | |
| Nokian Tyres Group[66] | Finland | 1898 | Nokian, Nordman | |
| Omni United Pte Ltd.[67] | Singapore | 2003 | Radar Tires, Goodride(tires), Corsa (tires), RoadLux (tires) | |
| Panaracer | Japan | 1953 | Panaracer | |
| Panther Tyres[68] | Pakistan | 1983 | Panther | |
| Pirelli[69][70] | Italy | 1872 | Agom, Courier, Metzeler, Pirelli, Formula[71] | |
| Petlas | Turkey | 1976 | Petlas, Starmaxx | |
| Petroshina JSC | Russia | 1860 | Petroshina | |
| Pro-Line | United States | 1982 | Pro-Line | |
| Rosava[72] | Ukraine | 1972 | Rosava | |
| Rubena, a. s.[73] | Czech Republic | 1908 | Rubena | |

| Company | Country of origin | Year founded | Brands and subsidiaries | Notes |
|---|---|---|---|---|
| | | | | Subsidiary of CGS Holding, a. s. |
| Ralf Bohle | Germany | 1922 | Schwalbe | |
| Shandong Hengfeng Rubber & Plastic Co., Ltd.[74] | China | 1995 | Cachland Tires, Hengfeng Tires, Hifly Tires, Ovation Tires, Sunfull Tires | |
| Saovang Rubber Company | Vietnam | 1960 | Saovang | Vietnam's first rubber manufacturing company. |
| Scantyre AB[75][76] | Sweden | 2004 | AGI | The AGI tire brand was acquired in 2013. AGI itself was founded back in 1994.[77] |
| Servis Tyres | Pakistan | 1970 | Servis | |
| Shanghai Huayi (Group) Company[78] | China | | Double Coin, Warrior | |
| STARCO[79] | Denmark | 1962 | Tusker | |
| Sumitomo Rubber Industries[80][81][82] | Japan | 1909 | Dunlop (Japan, Latin America, Asia and Africa), Falken, Goodyear (Japan), Sumitomo, Multi-Mile, Sigma, Cordovan, Vanderbilt, Ohtsu | |
| Titan Tire Corporation[83] | United States | 1890 | Continental (farm tires), Goodyear (farm tires), Titan | |
| Toyo Tire & Rubber Company[84] | Japan | 1943 | Nitto, Silverstone, Toyo | |
| Trelleborg AB[85] | Sweden | 1905 | Trelleborg | |
| Triangle Group[86] | China | 1976 | Triangle Group, Diamond back | |
| Vee Rubber Group[87] | Thailand | 1977 | Vee Rubber, NIKA, VEENTO | |
| Vogue Tyre and Rubber Co. | United States | 1914 | | |
| Vittoria | Italy | 1953 | Vittoria, Geax | |
| Yokohama Rubber Company[88] | Japan | 1910 | Mohawk, Yokohama | |
| Zenises[89] | United Kingdom | 2014 | Z Tyres (http://www.ztyre.com/index.php), T Tyres, Westlake, Triangle, iLink, Kapsen, Ardent | |
| SD International | China | 2002 | Maxtrek,Basoon,Kapsen,Zeta [*],Pace[*],Toledo[*] | [*] Private Brands |
| Shandong Zhongyi Rubber Co.,LTD. | China | 2004 | Joyroad, | |
| SHANDONG HAOHUA Tire CO., LTD | China | 2011 | Haohua, Goalstar,Lanvigator,Aplus | |

EXHIBIT "A"

## LIMITED SPECIAL APPEARANCE AND AGREEMENT FOR ACCESS TO CONFIDENTIAL MATERIAL

I hereby acknowledge and affirm that I have read the terms and conditions of the Protective Order dated _____ and agreed to by the parties ("Protective Order") in the action titled JAMES E. VARNELL v. BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC. I understand the terms of the Protective Order and under oath consent to be bound by such terms as a condition to being provided access to the CONFIDENTIAL MATERIALS furnished by the parties in this action. Further, by executing this Agreement, I hereby consent to the jurisdiction of the above-captioned Court or any Court of competent jurisdiction for the special and limited purpose of enforcing the terms of the Protective Order.

I recognize that all civil remedies for breach of this Agreement are specifically reserved by the producing parties in this action and are not waived by the disclosure provided for herein. Further, in the event of the breach of this Agreement, I recognize that the producing parties may pursue all civil remedies available to them as third-party beneficiaries of this Agreement.

_____          _____
Name                                             Date

_____          _____
Firm                                             Telephone Number

_____
Street Address

_____
State & Zip Code

NORTH CAROLINA

_____ COUNTY

Personally appeared before me this ____ day of _____, 2016, _____, who, being first duly sworn, acknowledged the execution of the foregoing agreement for the purposes and considerations therein expressed.

_____          _____
Notary Public                                   My Commission Expires